PETER A. MAGLIONE & another[1] *vs.* BANCBOSTON
MORTGAGE CORPORATION.

No. 89-P-720.

Middlesex. May 22, 1990. - July 30, 1990.

Present: BROWN, KASS, & PORADA, JJ.

*Lis Pendens. Real Property*, Mortgage. *Mortgage*, Real estate.

A lis pendens recorded by a mortgagee in connection with a declaratory
action seeking a determination of which of two mortgages had priority
of lien on certain land was properly ordered dissolved upon the condi-
tion that the mortgagor or the competing mortgagee place in escrow, or
secure by bond, the amount due on the note held by the recording mort-
gagee, pending the outcome of the litigation. [89-92]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 10, 1989.

A pretrial motion to permit the recording of a memoran-
dum of lis pendens was heard by *Wendie I. Gershengorn*, J.
A proceeding in the Appeals Court for review of the allow-
ance of this motion was heard by *Fine*, J.

*Edward A. Sokoloff* for the plaintiffs.
*Philipp G. Grefe* for the defendant.

KASS, J. Insofar as the plaintiffs have "a claim of a right to
title to [the] real property"[2] in question, it is as second mort-
gagees. The question presented is whether a judge may order
the dissolution of a lis pendens recorded by a mortgagee
upon condition that the mortgagor or a competing mortgagee
place in escrow, or bond, the amount due on the note. We
hold that a judge may do so.

Ordinarily, the presence of an undischarged mortgage —
at least a recent one — in a record chain of title will serve as

[1]Gretchen Maglione.
[2]See G. L. c. 184, §15, as appearing in St. 1985, c. 809.

well as a lis pendens in discouraging transactions in the encumbered property. What provokes the lis pendens issue in this case is that the plaintiffs, the Magliones, are disputing whether they or the defendant BancBoston Mortgage Corporation ("BancBoston") have a priority of lien in land in Sudbury, which we shall refer to as the "locus." The mortgagor, a real estate developer, has defaulted on its mortgage debt. BancBoston, which became the first mortgagee at the time the developer acquired the property from the Magliones, has foreclosed on the equity of redemption and desires to sell the locus. For reasons which need not detain us, the Magliones contest whether BancBoston continued to enjoy first mortgagee status. They commenced an action in Superior Court asking for a declaration of their status, i.e., whether junior or senior, as a mortgagee and for other relief.

In connection with their action the Magliones filed a motion that the judge before whom the action was pending endorse on their memorandum of lis pendens a finding that "the subject matter of the action constitutes a claim of a right to title to real property or the use and occupation thereof . . . ." G. L. c. 184, § 15, second par., as appearing in St. 1985, c. 809. A judge of the Superior Court allowed the motion, and the plaintiffs saw to it that the memorandum of lis pendens was recorded. Aggrieved by the ruling of the Superior Court judge, BancBoston sought review from a single justice of this court, as authorized by the next-to-last sentence of G. L. c. 184, § 15. See *Sutherland* v. *Aolean Dev. Corp.*, 399 Mass. 36, 39-40 (1987).

The principal amount of the promissory note payable to the Magliones by their defaulting purchase money mortgagor was $70,000. The single justice, before whom the matter came for review, entered an order that, "If and when BancBoston Mortgage Corporation places $70,000, the amount in dispute, in escrow pending the outcome of this litigation, the memorandum of lis pendens shall be vacated." As we understand the plaintiffs' position on appeal, it is that, as mortgagees, they had a legal title to the locus. Their dispute over priority of lien with BancBoston, therefore, bore on their

right to title to the locus because, if junior to BancBoston, their mortgage and their legal title would be wiped out by BancBoston's foreclosure.[3]

Literally, in Massachusetts, the granting of a mortgage vests title in the mortgagee to the land placed as security for the underlying debt. The mortgage splits the title in two parts: the legal title, which becomes the mortgagee's, and the equitable title, which the mortgagor retains. See *Vee Jay Realty Trust Co.* v. *DiCroce*, 360 Mass. 751, 753 (1972); *Negron* v. *Gordon*, 373 Mass. 199, 204 (1977). The purpose of vesting legal title in the mortgagee is to secure the debt owed by the mortgagor. *Krikorian* v. *Grafton Co-op. Bank*, 312 Mass. 272, 274 (1942). *Negron* v. *Gordon, supra* at 204. Although a mortgage vests title, that title is defeasible and is an off-shoot of the underlying debt. "[T]he debt," as the venerable maxim puts it, "is the principal and the mortgage an incident . . . ." *Morris* v. *Bacon*, 123 Mass. 58, 59 (1877). *General Ice Cream Corp.* v. *Stern*, 291 Mass. 86, 89 (1935). So it is that the mortgagor retains an equity of redemption, *Carpenter* v. *Suffolk Franklin Sav. Bank*, 362 Mass. 770, 776 (1973), and upon payment of the note by the mortgagor or upon performance of any other obligation specified in the mortgage instrument, the mortgagee's interest in the real property comes to an end. *Pineo* v. *White*, 320 Mass. 487, 489 (1946). *Atlantic Sav. Bank* v. *Metropolitan Bank & Trust Co.*, 9 Mass. App. Ct. 286, 288 (1980). These principles are enshrined in the mortgage condition described in G. L. c. 183, § 20, as the "Statutory Condition." Under the Statutory Condition, "if the mortgagor . . . shall pay unto the mortgagee . . . the principal and interest secured by the mortgage, . . . then the mortgage deed, as also the mortgage note or notes, shall be void." Indeed, the failure to give a

---

[3]We infer from the record that, following the dissolution of the lis pendens, BancBoston's foreclosure proceeded to an auction sale and conveyance of the locus. So far as the plaintiffs are concerned, the lis pendens question may be moot. This is a controversy, however, susceptible of repetition, yet evading review. See *Wellesley College* v. *Attorney General*, 313 Mass. 722, 731 (1943); *Adoption of Emily*, 25 Mass. App. Ct. 579, 580 n.1 (1988).

discharge of a mortgage after the underlying condition has been performed subjects the recalcitrant mortgagee to liability in tort. G. L. c. 183, § 55.

In practical terms, the difference between a "lien theory" and a "title theory" as to the nature of a mortgage is that under the latter the mortgagee may enter into possession of the mortgaged premises upon default and before foreclosure, whereas under the "lien theory" there is no right of possession; the mortgagee must await sale of the mortgaged property and obtains satisfaction of the mortgagor's debt from the proceeds of sale. Osborne, Mortgages §§ 13-16 (2d ed. 1970). The right of possession gives the mortgagee under a "title theory" regime slightly better control of foreclosure proceedings. See Mendler, Massachusetts Conveyancers' Handbook § 5:7.01, at 114 (3d ed. 1984). If other means are available to satisfy the debt, the vesting of legal title in the mortgagee is without practical significance.

Under the single justice's order, the debt owed the Magliones has been secured. The mortgagee's title, only a means to assure payment of an underlying debt, is without further relevance or force. To ascribe a right to title to the locus on the part of the Magliones becomes an exercise in the elevation of form over substance. The pending litigation between the Magliones and BancBoston will determine whether the Magliones are entitled to the $70,000 and will determine some other issue not here relevant; it will not adjudicate who has a right to title to the locus or the use and occupation of it. Third parties who are transferees of the locus do not need notice of the litigation. See G. L. c. 184, §15; *Debral Realty, Inc.* v. *DiChiara,* 383 Mass. 559, 560-561 (1981).

The order of the single justice, it will be recalled, undertook to secure "the amount in dispute." There exists the possibility that the underlying litigation could result in a higher judgment, but the greater amount would be premised on liability other than that having its source in the mortgage note and mortgage. Those other aspects of the litigation do not potentially affect the right to title to real property and would not be the basis for a lis pendens.

For the reasons stated, the single justice acted lawfully and within her discretion in ordering the posting of substitute security to satisfy payment of the underlying debt secured by the mortgage[4] and the dissolution of the memorandum of lis pendens when that substitute security was provided.

*Order of the single justice affirmed.*

---

[4]Generally, a judge making such an order will wish to add accrued and anticipated interest and an allowance for the reasonable costs of collection, including reasonable attorney's fees, if provided for in the note, to the amount to be posted as substitute security. Our opinion is without prejudice to the bringing of a motion by the Magliones to the single justice asking that her order be modified to take account of those additional costs.