# United States Court of Appeals
## For the First Circuit

No. 17-1666

R. ALEXANDER ACOSTA, Secretary of Labor,
United States Department of Labor,

Plaintiff, Appellant,

v.

LOCAL UNION 26, UNITE HERE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Thompson, Circuit Judge,
Souter,* Associate Justice,
and Selya, Circuit Judge.

Casen B. Ross, Attorney, Appellate Staff, Civil Division,
with whom Chad A. Readler, Acting Assistant Attorney General,
Andrew E. Lelling, United States Attorney, William D. Weinreb,
Acting United States Attorney, Mark B. Stern, Attorney,
Appellate Staff, Civil Division, Nicholas C. Geale, Acting
Solicitor of Labor, Beverly Dankowitz, Associate Solicitor,
Civil Rights and Labor-Management Division, Clinton Wolcott,
Counsel for Labor-Management Programs, and Anna Laura Bennett,
Attorney, Department of Labor, were on brief, for appellant.

---

* Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

Richard G. McCracken, with whom Paul L. More and McCracken, Stemerman & Holsberry LLP, were on brief, for appellee.

———————————————

July 11, 2018

———————————————

SOUTER, **Associate Justice**.   In this suit brought against defendant Local Union 26, UNITE HERE, the Secretary of Labor claims that the union violated § 104 of the Labor-Management Reporting and Disclosure Act of 1959 (the "LMRDA") when it refused to allow one of its members to take notes while inspecting its collective bargaining agreements ("CBAs") with other employers.  The district court held that the member's statutory right to "inspect" the agreements did not encompass a right to take notes while doing so.  We affirm.

The material facts may be stated briefly.  Dimie Poweigha is a member of Local 26.  The union has negotiated more than 40 CBAs, including one with Poweigha's employer.  Poweigha was dissatisfied with the administration of Local 26, and asked the union to permit her to review 37 CBAs Local 26 had negotiated with employers other than her own.  Eventually, once the Secretary of Labor got involved, the union offered Poweigha opportunities for this purpose, but said that it would not allow her to take notes on the CBAs during her inspections.  When the Secretary learned of the union's position, he filed this suit, contending that the limitation on note-taking violated § 104 of the LMRDA, 29 U.S.C. § 414, in particular, the union's obligation under § 104 to make such CBAs "available for

- 3 -

inspection by any member or by any employee whose rights are affected by such agreement[s]."[1]

The parties filed dueling motions for judgment on the pleadings, and the district court granted judgment for Local 26 on the issue before us. We review a district court's judgment on the pleadings de novo. See Rezende v. Ocwen Loan Servicing, LLC, 869 F.3d 40, 42 (1st. Cir. 2017).

Section 104 reads, in relevant part, as follows:

> It shall be the duty of the secretary or corresponding principal officer of each labor organization, in the case of a local labor organization, to forward a copy of each collective bargaining agreement made by such labor organization with any employer to any employee who requests such a copy and whose rights as such employee are directly affected by such agreement, and in the case of a labor organization other than a local labor organization, to forward a copy of any such agreement to each constituent unit which has members directly affected by such agreement; and such officer shall maintain at the principal office of the labor organization of which he is an officer copies of any such agreement made or received by such labor organization, *which copies shall be available for inspection by any member* or by any employee whose rights are affected by such agreement.

29 U.S.C. § 414 (emphasis added).[2]

---

[1] Though the Secretary has previously taken this position in litigation, the Labor Department has not promulgated a regulation addressing the scope of § 104's inspection right.

[2] Before the district court, Local 26 contended that a union member possesses no right even to inspect a CBA under § 104 unless that member's rights are "affected by such agreement." 29 U.S.C. § 414. The district court rejected that argument, holding that the statutory phrase "whose rights are affected by such agreement" modifies "any employee," not "any member." The rule of the last antecedent, "according to which a limiting clause or phrase . . . should ordinarily be read as modifying

- 4 -

In accord with standard definition and common understanding, an "inspection" is the "[a]ct or process of inspecting," Webster's New International Dictionary 1286 (2d ed. 1957), and to "inspect" does not mean to take notes, but rather "[t]o look upon; to view closely and critically, esp. so as to ascertain quality or state, to detect errors, etc.; to scrutinize," id. Taking the plain meaning of the word as its statutory meaning is buttressed by two features of the LMRDA that convince us that Congress did not intend the relevant clause to give union members a right to take notes while inspecting other employers' CBAs.[3]

First, the LMRDA uses the term "inspect" elsewhere, and the drafting and legislative history of that neighboring provision makes clear that Congress did not intend the term to include a right to take notes. Section 401(c) of the LMRDA, enacted at the same time as § 104, provides that:

> Every bona fide candidate shall have the right, once within 30 days prior to an election of a labor organization in

only the noun or phrase that it immediately follows," supports the district court's construction. Barnhart v. Thomas, 540 U.S. 20, 26 (2003). But because the union does not reprise this particular argument on appeal, we need not resolve the issue conclusively. Instead, we may assume that Poweigha had a right to inspect the CBAs in issue.

[3] The Secretary requests "some measure of deference" if we find the scope of the inspection right to be unclear. Because we do not, we have no occasion to grant him any.

- 5 -

which he is a candidate, *to inspect* a list containing the names and last known addresses of all members of the labor organization who are subject to a collective bargaining agreement requiring membership therein as a condition of employment, which list shall be maintained and kept at the principal office of such labor organization by a designated official thereof.

29 U.S.C. § 481(c) (emphasis added).

Critically, earlier drafts of this provision provided candidates not merely with a right to "inspect" membership lists, but with a right to "inspect and copy" such lists. See H.R. 8400, 86th Cong. § 401(b) (1959). But Congress dropped the words "and copy" from the final version of the LMRDA.

"Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language." I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 442–43 (1987) (internal quotation marks omitted). And the legislative history confirms the application of this common-sense principle here. See H.R. Rep. No. 86-1147, at 34 (1959) (stating that the words "and copy" were eliminated to "deny candidates the right to copy membership lists"); see also Garcia v. United States, 469 U.S. 70, 76 (1984) ("In surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which represent the considered and collective understanding of

- 6 -

those Congressmen involved in drafting and studying proposed legislation." (internal quotation marks and alteration omitted)).[4]   In other words, under § 401(c) of the LMRDA, Congress plainly did not intend the right to "inspect" to include the right to copy.   Not surprisingly, the Secretary has issued a regulation reaching this same conclusion.   See 29 C.F.R. § 452.71 (the right to inspect a membership list under § 401(c) "does not include the right to copy the [membership] list").   And no distinction can be drawn from the difference between "copying" then and "note-taking" now, because in 1959, the year of enactment, a right to "copy" would, as a practical matter, have been exercised by handwritten note-taking.   "Office copying as we know it didn't arrive until 1960."   David Owen, Copies in Seconds 10 (2004).

If the right to "inspect" in § 401(c) of the LMRDA does not provide a right to take notes, it would be at odds with another well-established canon of statutory interpretation to read "inspect" in § 104 of the same Act to confer that same right.   That canon teaches that "identical words and phrases within the same statute should normally be given the same meaning."   Powerex Corp. v. Reliant Energy Servs., Inc., 551

---

[4] The Secretary concedes the point. See Reply Brief for Appellant 2 ("The legislative history of section 401(c) indicates that it does not include a right to copy membership lists . . . .").

- 7 -

U.S. 224, 232 (2007). After all, it would assume a certain whimsy on the part of Congress to conclude that it used the term "inspect" in two different senses within the same statute.[5] Though the rule, like most, admits of exceptions, there is no apparent reason to question its applicability here.[6]

The second feature of the statute that persuades us of our reading is that when Congress wished to provide individuals with a right to a "copy" of a CBA, it said so expressly. In particular, § 104 entitles "any employee . . . whose rights as such employee are directly affected by [a CBA]" to a copy of that CBA. 29 U.S.C. § 414. If Congress had intended to entitle union members to copies of every CBA a union negotiates, it needed only to say so. Cf. Knight v. C.I.R., 552 U.S. 181, 188 (2008) ("If Congress had intended the Court of Appeals' reading, it easily could have replaced 'would' in the statute with 'could,' and presumably would have. The fact that it did not adopt this readily available and apparent alternative strongly

_____

[5] The Secretary observes that §§ 104 and 401(c) were enacted in separate Titles of the LMRDA. But the canon is not limited to terms enacted in the same statutory title. See Antonin Scalia & Bryan A. Garner, Reading Law 172 ("The presumption of consistent usage applies also when different sections of an act or code are at issue."). The Secretary cites no authority to the contrary.

[6] The Secretary tries to avoid application of this canon by suggesting that membership lists are more sensitive than CBAs and therefore entitled to greater protection. But these concerns are not apparent on the face of the statute, and the Secretary cites no legislative history in support of the point.

supports rejecting the Court of Appeals' reading."). But Congress did not say so. To be sure, what Poweigha claims is not a right to obtain a copy but, in effect, a right to make one herself. We doubt, however, that the distinction matters. It would be passing strange, if not downright mean, for Congress to have intended to withhold a right to receive a copy, while simultaneously conferring a right on members to create handwritten copies themselves.

The Secretary's remaining counterarguments need not detain us long. First, the Secretary asserts that the inspection right would "be nullified without the ability to take notes." See Reply Brief for Appellant 5. But as the Secretary himself acknowledges, "the purpose behind section 104" is to "give[] union members . . . 'ideas'" that they may "put forward to the union's negotiators." Id. at 6. One need not be permitted to take notes in real time to come away with ideas from the review of a CBA; a working memory will do. Second, the Secretary suggests that his interpretation is the better one because it is more supportive of the LMRDA's purposes of protecting union members and promoting democratic self-government within unions. But Congress was undoubtedly balancing competing interests in enacting the LMRDA, and, in any case, "no legislation pursues its purposes at all costs." Rodriguez v. United States, 480 U.S. 522, 525–26 (1987)

(per curiam); cf. Calhoon v. Harvey, 379 U.S. 134, 140 (1964) (noting, in construing the LMRDA, "the general congressional policy to allow unions great latitude in resolving their own internal controversies").    Third, the Secretary points to another provision of the LMRDA, permitting members "for just cause to examine any books, records, and accounts necessary to verify" the union's annual financial reports, 29 U.S.C. § 431(c), which some courts have interpreted to permit note-taking, see, e.g., Conley v. United Steelworkers of Am., Local Union No. 1014, 549 F.2d 1122, 1123-24 (7th Cir. 1977).  Whether that interpretation is correct or not, the meaning of the word "examine" in a separate provision of the LMRDA has little, if any, bearing on the meaning of the word "inspection" in § 104 of the Act.  That is particularly apparent in light of the "just cause" requirement that "protect[s] . . . unions from harassment" when it comes to the exercise of the examination right, a protection that unions do not enjoy when a member wishes to inspect a union's CBAs with other employers.  Conley, 549 F.2d at 1124.

For these reasons, we hold that, in conferring a right on union members to "inspect[]" CBAs under § 104 of the LMRDA, Congress did not also invest the members with a right to take notes.  Unions are free to permit note-taking, of course, or to

- 10 -

provide copies of such CBAs.  But Congress has not commanded them to do so.

<u>Affirmed</u>.